93    7
113   658

Jacob E. Fox, Appellant, v. Capital Insurance Company, of Des Moines, Iowa.

**Insurance:** construction of policy. One receives goods to be
1  paid for if sold, unsold goods to be returned. He obtains a
   policy in his own name insuring said goods, intending to insure to
   the full value of the property. His title and said intention are
2  known to the insurer. *Held,* the fact that the policy limits
   recovery to an amount not exceeding "the interest of the insured"
   does not prevent plaintiffs recovering the full value of goods
   destroyed, though his *personal* interest in such goods may be less
   than their value.

*Appeal from Polk District Court.*—Hon. C. P. Holmes,
Judge.

Monday, December 17, 1894.

Action on a policy of fire insurance. Judgment for
defendant, and the plaintiff appealed.—*Reversed.*

*Gatch, Connor & Weaver* for appellant.

*Read & Read* for appellee.

Granger, C. J.—This is a law action, and it was
tried in the District Court without a jury, and the trial
judge filed a carefully prepared opinion, in which the
facts are found and considered in the light of the law
applicable thereto; and, as there is no question as to the
correctness of the facts as found, we quote the part of
the opinion showing the facts and some of the conclu-
sions of the court upon legal questions involved:

"Action brought on a policy of insurance, by the
terms of which the defendant company agreed to insure

the plaintiff 'against loss or damage by fire, not exceeding the sum of $750, on the following specified and located property, namely, $750 on stock consisting principally of saws, saw-sharpening machinery, and saw teeth, received and held by him on consignment, all while contained in the two-story, corrugated iron building situated on the south side of Yesler avenue, west of Railroad avenue, Seattle, W. T.' The only other clause of the policy material to the issue made is the following: 'An~ the Capital Insurance Company hereby agrees to make good unto the assured, his executors, administrators or assigns, all such immediate loss or damage, not exceeding the sum insured, *nor the interest of the assured*, as may occur by fire to the property above specified.' The defense relied upon was that under the facts shown in evidence, and the clause in the policy last recited, the plaintiff is not entitled to recover. The cause was tried to the court, resulting in a finding for the defendant. Counsel for plaintiff felt that upon the question decided by the court he had not given that investigation and thought that in view of the holding of the court it deserved, and he was granted time to prepare and argue a motion for a new trial. The cause has now been carefully and fully submitted by counsel for both parties. The court has given the question involved all the attention circumstances will permit. In view of the very full discussion of all the questions upon this submission, I will treat the cause as having been originally submitted upon this hearing. It is not denied that the property covered by the policy was destroyed, and for my present purposes I will assume that due proofs of loss were made, and that all acts have been done by the plaintiff requisite to fix the liability of the defendant company.

"1. What interest did plaintiff have in the goods destroyed? Plaintiff's deposition was taken, and the

following answers will show his claim: 'The goods were held by me in trust or on consignment, and to be paid for as sold by me.' 'My title was that of consignee, on the condition that all goods not sold or used by me were to be returned to consignor at his request.' 'My interest, by reason of freight advanced and liability for the goods, until returned, or the price therefor paid;' 'Being well known by the parties from whom I received the goods, I ordered the same, and informed them of the terms on which I desired the goods, which was to pay for the same as sold, and, if not sold, to be returned at their option.' The last answer seems to be the only one in which he has attempted to state the terms of the contract between the consignors and himself. His other answers are largely in the nature of conclusions, drawn by himself, from his course of dealings with the parties. I am disposed to accept this last statement as the more satisfactory, and to conclude that plaintiff had the right to sell the property; and when he sold any portion of the goods he was bound to pay therefor, and the pur- chaser received a good title to the property purchased; that the consignors had the right to demand the return of the unsold goods at any time, and that it was plaintiff's duty to return them; that plaintiff fixed the prices at which he should sell the goods, of which the consignors had no knowledge, so far as shown, and I infer that plaintiff settled and paid for goods sold on the basis of the consignor's prices therefor. Assuming such to be the contract, in whom was the title and ownership of the property destroyed at the time of the fire? If it was in the plaintiff, he is clearly entitled to recover therefor. I have been unable to find any case exactly parallel to this. The case which seems to me to most clearly correspond with the one under examination, to which my attention has been called, is the one referred

to by Mr. Benjamin in his work on Sales (section 598): 'In a case before the lords justice *(Ex parte White, In re Nevill)* the facts were that Alfred Nevill was a partner in a firm of Nevill & Co. He also did business on his individual account with Towle & Co., cotton manufacturers. His dealings with Towle & Co. were conducted as follows: They consigned goods to him, accompanied by price list, and he sent to them monthly an account of the goods which he had sold, debiting himself with the price given in the price list, giving no particulars whatever as to his sales; and in the next month he paid according to his accounts thus rendered. He frequently had the goods received from Towle & Co. dyed or bleached before selling them, but he gave no account of this to Towle & Co., and did not charge them with the expense. By an arrangement between Nevill and his partners he paid to the credit of the firm's general account the money received by him from the sale of Towle & Co.'s goods, and when he made payments to Towle & Co. he sent them either bills received from the purchasers of the goods, subject to a discount which Towle & Co. charged against him on their books, or checks, or both; and when checks were sent they were always drawn by the firm of Nevill & Co. Nevill dealt with his own firm as his bankers. He had a private account with them of all moneys paid in and drawn out in matters not relating to the partnership, and this account included many entries not at all connected with the goods of Towle & Co. Nevill & Co. became bankrupt, and there was a balance in favor of Alfred Nevill on their books in the above-mentioned private account, and Towle & Co. claimed that this was trust money improperly paid by Nevill to his firm, with knowledge of the latter of the trust; and it was not disputed that the balance in Nevill's favor on the private account arose chiefly from the proceeds of the goods

received from Towle & Co.   On these facts both the lords justice (James and Mellish) decided that the true contract between Nevill and Towle & Co. was not an agency by which the former on a *del credere* commission sold goods on behalf of the latter, but that it was one of 'sale or return;' that the money received by Nevill for the goods was his own money arising out of the sale of his own goods, the property in the goods passing to himself as soon as, by his sale, he put it out of his power to return them.   Lord Justice James said that Nevill's unquestioned authority to deal with the goods as above described was quite inconsistent with the notion that he was acting in a fiduciary character in respect to those goods.   'If he was entitled to alter them, to manipulate them, to sell them at any price he thought fit after such manipulation, and was still only liable to pay for them at a price fixed beforehand, without any reference to the price at which he had sold them, or to anything else than the fact that he had sold them in a particular month, it seems to me impossible to say that the produce of the goods so sold was the money of the consignors, or that the relation of vendor and purchaser existed between Towle & Co. and the different persons to whom Nevill sold the goods.'   It will be noticed that the question in this case was who was the owner of the proceeds of the goods sold, rather than of the goods themselves.   But, as the owner of the goods is entitled to the proceeds of their sales, it necessarily follows that the party entitled to the proceeds is the owner.   From what is disclosed of the relation between the consignors and the plaintiff in this case, and of the course of dealings between them, I am unable to distinguish between the case just referred to and the one at bar; and it seems to me that the goods in question were the property of the consignors, and so remained until sold by the plaintiff, unless before that

time the consignors should order them returned. As
to what would have been the rights of the parties in
case the goods had been destroyed by reason of the
gross carelessness of plaintiff, or in case the consignors
had ordered them returned and plaintiff had refused to
do so, or had held them an unreasonable length of time
after notice from the consignors, it is not necessary to
here discuss. There is no evidence of plaintiff's care-
lessness, nor is there any evidence that the consignors
had demanded the return of their goods. Plaintiff tes-
tifies that since the fire he has paid to some of the con-
signors the value of their goods destroyed, which per-
haps tends to show that he considered himself respon-
sible to them until their goods were in fact returned or
paid for. Of course, he had the right to take any view
he saw fit of his moral and legal obligations, but his
views cannot be binding on the court, nor can they bind
the defendant in this case. It was suggested in argu-
ment that plaintiff was a *del credere* agent, and as such
could insure the property in question for the benefit of
the consignors. My understanding of a *del credere*
agent is that he guarantees payments by purchasers to
whom he makes sales of goods received on consign-
ment, and that by reason of such guaranty he may make
an additional charge for his services. There is no
claim that plaintiff guarantied payments by those to
whom he made sales; on the contrary, he became liable
for all goods sold as soon as they passed out of his
possession.

"2.   I do not wish to be understood as holding that
the plaintiff did not have an insurable interest in the
property described. I have no doubt that he had the
right to effect insurance thereon, and that such insurance
would *ordinarily* be binding upon the insurers to the full
value of the property described. Besides this, he had a
personal interest in the property to the extent of the

freights, insurance and other charges by him paid thereon, and possibly to the extent of the difference between the prices at which the goods were received by or billed to him, and the market prices thereof at the time of the fire. As to these elements of damage or loss, it may as well be stated here that he has furnished no proof as to the amount of charges paid by him, nor the difference in prices referred to, so that the court is unable to determine the extent of his personal and direct interest in the property. The liability of the defendant depends entirely upon the terms of its undertaking. It is quite probable that plaintiff intended to secure insurance which should protect not only his own interest in the property, but also that of the consignors. It is even likely that the agent of the defendant company who wrote the policy so understood, and that he intended to make a contract which should cover both interests; but for the purposes of this action I must take the contract as I find it, and if, in plain terms, it exonerates the defendant company from losses sustained by persons other than the plaintiff, and limits his right of recovery to his own interest in the property described, this court cannot enlarge the contract, nor can it give a greater measure of relief than the parties have stipulated for."

A third division of the opinion presents the question considered therein as follows: "There yet remains to be determined the question whether this contract of insurance covers any other interest in the property insured than the personal interest of the plaintiff, as stated in the last paragraph." By this "personal interest" is meant freights, insurance, and other charges paid by plaintiff on the goods, with certain differences in prices, for which no recovery could be had, because he furnished no proofs of such payments or differences in prices. The court states the contention of the par-

ties as follows: "The plaintiff contends that his interest in the property was up to the full value thereof; while the contention on the part of the defendant is that the plaintiff's interest was confined to the items last above set out," being freight, insurance, etc. The opinion then deals with a construction of the policy as bearing on the question under consideration by reviewing several cases cited by plaintiff, and concludes that defendant's contention is correct, and plaintiff's petition was dismissed. A few significant facts may be profitably restated. The court said: "I do not wish to be understood as holding that the plaintiff did not have an insurable interest in the property described. I have no doubt that he had the right to effect insurance thereon, and that such insurance would ordinarily be binding upon the insurers to the full value of the property described." From this we understand the court to have found that the plaintiff had an insurable interest in the property insured to its full value. The court further said upon the question of fact: "It is quite probable that plaintiff intended to secure insurance which should protect not only his own interest in the property, but also that of his consignors. It is even likely the agent of the defendant company who wrote the policy so understood, and that he intended to make a contract which should cover both interests." These conclusions can mean only this: That plaintiff had an insurable interest to the full value of the property, which, beyond his personal interest, must have been the interest of his consignors, for the two embrace every known interest in the property. We construe the language of the court as to the probable intent of the parties to mean that the evidence warrants such a belief or conclusion. We have, then, a case in which an applicant for a policy desires insurance to the full value of the property described,

and the party who writes his policy understands that he desires it, and writes the policy intending to give it. This understanding should prevail, unless the language of the policy, without reformation, forbids it. By the terms of the policy it insures the plaintiff on a stock of goods "held by him on consignment." It is stated in the policy: "And the Capital Insurance Company hereby agrees to make good to the assured    *    *    * all such immediate loss or damage, not exceeding the sum insured, nor the interest of the assured, as may occur by fire to the property above specified." Under the facts as found, the parties, when contracting, knew the plaintiff was a consignee of the goods. They understood that he was seeking insurance for their full value, and there was an insurable interest to that extent. The limit of liability in the policy to an amount "not exceeding    *    *    *    the interest of the assured" does not, of necessity nor by any arbitrary rule of construction, apply to a personal or pecuniary interest, so there is nothing to prevent that application that will harmonize with the intent of the parties in making the contract. It seems to have been the thought of the court below that the language is an absolute limitation to what is spoken of as a personal interest. We do not concur in that view. We think the "interest of the assured" should have as broad an application as the mutual understanding of the parties warrants under the facts of the case. Such a construction is violative of no law, and compels the defendant company to pay a loss it unquestionably contracted to pay. This view is conclusive of the case, and other points need not be considered. The cause is remanded to the District Court with instructions to ascertain the amount of the loss under the evidence, not exceeding the limit of the policy as to amount, and enter judgment for plaintiff therefor.—
*Reversed.*